Chief Judge Gregory, and may it please the Court, my name is Jenny Lysdon here on behalf of the appellant Lacresha Slappy. Your Honors, unlike this first case that we heard, this is a very simple, straightforward case. Everybody says that. Well, it is simple and straightforward, I contend, in that this Court and the Supreme Court have said over and over and over again that there are two things that a court at sentencing absolutely must do. And these are the two things that Judge Fox in this case failed to do. First, when a party presents non-frivolous arguments in favor of a lower sentence, the sentencing court must address those arguments and explain why those arguments have been rejected. Judge Fox did not do that in this case. And second, when a judge decides to awkwardly depart from the guidelines and impose an above-guideline sentence, the judge must then carefully explain why he has decided to make that decision. And the greater the departure from the guidelines, the more compelling those judgments are. These aren't guidelines. That's correct, Your Honor. They are policy statements. However, I would contend that this Court and the sentencing courts in general more or less view these policy statements as extremely helpful, I would say. You know, that's astounding to me, because I used to sentence as a district court judge when the guidelines were mandatory. When the guidelines were mandatory, the policy statements were basically, you just had to acknowledge that you looked at them. They didn't carry any more weight than that. You had to say, I have looked at them. So the argument is, you're not the first to make it, that now with the guidelines being advisory, the policy statements somehow are even more, are now more important than they used to be. That doesn't seem to make sense to me. Your Honor, be that as it may, this Court has said over and over again, and specifically to Judge Fox, that if you're going to upwardly depart and impose such a drastic departure... There's another question I have. Is it a departure or variance when, in fact, those policy statements don't control anything? The guidelines used to absolutely control. Now we say they're advisory, but you still do have to look at them. All you ever had to do was even less than that on the policy statement. You just had to basically acknowledge they were there and you'd looked at them. They didn't control in any other kind of way. You didn't have to vary from them. You didn't have to depart from them. You just had to say you looked at them and considered them. But now that the guidelines don't carry as much weight, the ancillary policy statements are elevated and controlled? Well, Your Honor... You understand my question, don't you? I mean, you do, don't you? I don't know what your answer is, but you understand my point, don't you? I do understand your point, Judge Shedd. I absolutely do. And I did read your dissent in the Fisher case, which I have cited in my brief. The Court here imposed, and I think it's important to remember, the Court here imposed the statutory maximum sentence on Ms. Laffey. And that maximum sentence is generally reserved for the very worst of offenders. Says who? Says who? That's what the judge has the authority to go to that. Who says the statute says you can give somebody that sentence, but only if you think it's the worst violator. Well, Your Honor... Where does that come from? I think the Chapter 7 policy statements are trying to give guidance and to then achieve the 3553A factors of avoiding sentencing disparities between offenders. Well, now, sentencing disparity may be something else. But you just said they were reserved for the worst. I don't see where that comes from. I'm not sure how else, Your Honor, when you have the grade A, grade B, grade C violations, which the guidelines say this is to promote proportionality in the sentencing and to avoid the sentencing disparities between different people and different types of offenders. Ms. Laffey could have had... Do you think the passing comment, I don't want to undervalue him too much, that they limit the court's discretion? I know that you would like for him to not give at the statutory maximum, but the policy statements don't limit a judge's discretion in giving the maximum sentence. Maybe a 3553A, you could say maybe they do, right? Right. And you think it's the policy statements that create the error here or 3553A, which creates... What error did he make based on why this is error based? Your Honor, this court has said over and over again at a revocation proceeding that the court, if it uprightly departs, must do two things, should do two things. Where the party presents a non-frivolous argument in support of the lower sentence, the judge should explain why he has rejected those arguments. You never said you had to do that odd seriatim, though. You don't have to go... You made statement 1A, 1B, 1C. The court doesn't have to take them just like that, do you think? I think the judge has to say something. I think the judge has to respond, has to indicate. In order to permit meaningful appellate review before this court, the judge has to say something in response to the party's argument to ensure that the judge has, in fact, heard and contemplated the arguments made by the parties. And Judge Fox simply made absolutely no statements to indicate that he had heard Ms. Lappe's arguments. And the government, of course, is offering all sorts of post-hack rationalizations of what Judge Fox's arguments may have been and what he may have been thinking. The government is saying things like, well, he absolutely considered her argument, but he didn't find it convincing. So you want us to send this back and say, we're not saying what you imposed is incorrect, but just give us a longer explanation or essay on what you did. I think that is... I certainly think that this court could find procedural error on this record, absolutely, and send it back. However, we of course contend that the sentence itself is also substantively unreasonable, given the fact that these were very minor violations, grade C violations. What do you make of the fact that he said he was only considering two, but he actually talked about all five? And then talked about all five. I think that's actually sort of a confusing part of the record, and this is on Joint Appendix 36. When you look at what Judge Fox actually said... Do I have it confused at all? He said I'm only considering two, but yet he talked about five. And then he talked about five. Am I confused about that fact? I think it is confusing in terms of he says first he's only going to find two, but then he goes ahead and talks about all five. He also never actually says what the sentencing range is. He never actually acknowledges that these are grade C violations, and simply says, well, this sentence is imposed to afford adequate deterrence to criminal conduct imposed to the law, rather than the defendant's use of inaudible is a threat to society. So why is that imposition of that highest statutory number, why is that unreasonable? Substantively unreasonable? Because again, these were the very lowest violations. These are grade C violations. That's just your assessment of what you would do. I know you don't agree with him. I got that. But why is what he did substantively unreasonable? Why is that unreasonable? Because, again, the guidelines are trying to promote proportionality in sentencing to achieve the 3553A6, Avoiding Sentencing Disparities. And if you're just going to give everyone a stat max, then you're elevating policy statements to at least the level of guidelines. Based on this record, Your Honor, Ms. Lappie could have been out committing armed robberies. She could have done absolutely the worst type of conduct, and she would have still gotten the same sentence. But she didn't. And Judge Fox's failure to recognize that and failure to afford it. Your standard then that you would have us apply is, if you don't do the worst type of violation, you can't get the maximum. What if you did a series of minor violations? Why wouldn't that justify? Why would it be unreasonable to give somebody the maximum? It's possible that it may not be unreasonable, Judge Shedd. But if you do give that sort of sentence, you do need to actually put compelling reasons on the record. And that's what Judge Fox did not do that in her sentence. Let me just ask, why do they have to be compelling? Do you mean just justification for, or your rationale for, or do you mean by compelling? In other words, give the basis for which you are making an argument based upon the case law that's there and where we are in terms of the posture and how this Court has looked at the factors here, the policy statements, in light of the existing case law, and then how does this depart from the case law? Because you're giving general statements in terms of, well, you have to be compelled. You're not going to get anywhere with that. You've got to at least allow some source to say these things exist. Certainly, Judge Wynn. Thank you so much. I would cite to this Court's recent decision in Tory McCarthy, which was the actual case that this case, Ms. Laffey's case, was placed in advance for. That was a Judge Fox case. In that case, and I'm citing to the McArthur JA page 20 in the McArthur case, in that case, Mr. McArthur had, Judge Fox found that he had committed criminal conduct, that he had failed to notify the officer within 72 hours of being arrested, that he had used a controlled substance, he had absconded from supervision. Judge Fox found the custody range was 30 to 37 months, with 60 months available. Judge Fox said that he considered the policy statements, the revocation, and the relevant factors under 3553A, and imposed the statutory maximum. Judge Fox said the Court has departed upwardly in view of the defendant's egregious conduct. This sentence is imposed to afford adequate deterrence to criminal conduct, and to promote respect for the law. And when this Court reviewed what Judge Fox said, this Court found that the District Court failed to address McArthur's arguments for a lower sentence, and did not adequately explain its variance using permissible sentencing factors. This Court also... Is that an unpublished opinion? That is an unpublished opinion, Your Honor. What standard are we applying here to review the sentence, for the substance of the sentence? This is an abusive discretion standard. No, no, I'm talking about, isn't it, whether or not it's unreasonable? Correct. Unreasonable. Is it plainly unreasonable? Yes, Your Honor, it is plainly unreasonable. Procedurally erroneous, it is plainly unreasonable because it is procedurally... Is it plainly unreasonable? That's different than unreasonable, isn't it? Correct. And so, it's plainly unreasonable if the trial court failed to abide by this Court's published decisions instructing it on what it must do. And in Thompson and Carter Crudup, the entire line of cases, this Court has said again and again that when the party presents non-frivolous arguments in favor of a lower sentence, the trial court must address those arguments. Does that make it unreasonable or plainly unreasonable? It makes it plainly unreasonable because there is published authority telling the trial court what to do. That's the distinction you draw, that there's a case that matches up completely and you don't follow it. That's plainly unreasonable? No, Your Honor. The Court has been offering guidance on this exact issue in published decisions going back to... And this is, I mean, this is Gall. This is Rita. This is Thompson. I know that. Gall and Rita didn't talk about plainly unreasonable. They talked about unreasonable. That's true. That's my point. And then Thompson talks about plainly unreasonable and at revocation sentences. Does that add anything to the analysis of unreasonable? Does the word in the statute plainly add anything? By the way, I'm not beating you up on this. I've puzzled over this. I put it in Crudup because that's what the statute says. Well, Your Honor, certainly this Court has found revocation sentences just like the one that Judge Fox imposed found in MacArthur, in Maddox, in Towns before... Your argument is, who the heck knows? We just don't know. In this case, whatever you call it, it's improper. That's your argument. This Court has said that... I mean, that's their argument, isn't it? This Court has said that such a sentence is plainly unreasonable. But the nuances I'm working through on plainly unreasonable or unreasonable, you say, fine, Judge Shea. That's nice to talk about it. But at this point, we have enough guidance to know that whatever he did failed under whatever standard we apply. Yes, sir. I do agree with that. It's a fair position to take. What more should he have done, do you think? Can we glean from the record of what more should he have said? You know, because I think we've made it clear you don't have to address every single argument somebody makes. Absolutely. By the way, you said this case was straightforward and simple, but really we get to this on the question of response to what somebody's raised. We talk about what level of response. Do you think it's some level of response that assures the Court that he or she is cognizant of it and has given some thought to it? Absolutely, Your Honor. So Judge Fox could have said just what the government says he should have... that he was thinking purportedly. He could have said, you know, Ms. Lappe, I admire that you have been trying. I commend your efforts in the Scared Straight Program, but you know, given your drug use and this conduct... No, no, he just never addressed it somewhere, you say. Just something. Something to assure this Court that Judge Fox actually heard and gave... If this were to go back, do you think he could look at all five violations? I think he's only found two. For sentencing purposes, it isn't... No, I'm asking, could he go back and consider, he didn't find she did violate the other three. He said, I'm just not taking them up. If it goes back, could he say, this is back in front of me, I'm going to look at all five to make it clear what I'm doing because I didn't talk about it in sentencing. My determination of sentence. So Judge, to be perfectly candid, this will not go back before Judge Fox because he retired from the bench at the end of March. He told me he was tired of people appealing everything to him. So it would go back to somebody else. Would that judge be able to look at all five? Would it start from scratch? I don't believe so. In terms of finding the violations, I think this is now the law of the case. I'm not sure you're right about that, but I take your argument is. But I'm not sure you're wrong either. It's just that these two were the ones that were determined. These are what she was revoked on. And since you appealed it and the government didn't do anything, I don't know that way this would come out. But your point is, this is what we're faced with. We shouldn't be penalized because we had the audacity to. But the judge did, basically. It's just not right to put the defendant in that position because they had rights and they wanted to raise those rights. We shouldn't lose the benefit we got before just because we raised another. I would agree, Your Honor. Thank you so much. Mr. Pender? Good morning, Your Honors, and may it please the Court. My name is Don Pender. I'm here today on behalf of the United States. I'm going to get a little out of order of what I originally had planned because I've heard the defendant speak quite a bit about whether or not the Court should have addressed the counter-arguments. And I did cite in a response to the defendant's 28-J letter, I cited a case, Boulware, which was under a harmless error standard. But the Court there held that based on the weakness of the arguments, they didn't need to be addressed. And I think that that reasoning applies here. Now, the defendant has cited a couple of unpublished cases. Maddox, she cited Towns. I would point out that in all those cases, these are fact-specific cases. And when you look at the facts of those cases, for example, Maddox, you had a defendant there whose first violation was four years into supervised release. This defendant had a strong employment history, had strong family support. In Towns, you had a defendant who had some evidence of mental illness, but that had been taken care of his family and had been working a job. You don't have those facts here. Here you have a defendant who less than three months out of prison, fell on her first drug test. Two months after that, she fells two more drug tests. In both of those cases, the Court shows mercy. Well, when you release people from prison who are still sick, are you surprised because they call three months later? I understand sort of where you're going with that. I'm not going anywhere. I just want you to ask the question. You made the point it was three months, but if you're still sick, you leave prison with pneumonia, you're still going to be coughing, aren't you? If there was evidence, yes. To answer your question, yes. Now, if I had seen something in this record that indicates that this is a defendant who has had a long history of who has a drug problem, then to me that would be a little different. I haven't seen anything in this record that indicates this is a defendant with a drug problem. Now, she has a stealing problem, but this is not a defendant with a drug problem. And so, and further, in both of those cases, when she fell on her first drug test and when she fell on her second two drug tests, the Court, you know, was very merciful. In the first case, the Court held it in advance and gave her drug treatment. Second case, the Court, you know, sent her a couple weekends in jail and gave her behavior therapy. Not four months after that, she commits these five violations. Are you saying that that's not an indication of a drug problem? What? The dirty urine drug test? That's not an indication of a drug problem? Well, I don't think everybody that uses drugs is sick. That's another matter. You said that there's no indication that she has a drug problem. I'm asking you, coming up positive on the drug test, is that an indication of a drug problem? No. It's not? No. It's an indication that you What is it? You have to be throwing up on the street or shivers or whatever? What do you have to do? Well Maybe steal. Like a pair of shoes from the store. Would that be an indication of a drug problem? I don't think so. Oh, okay. I don't think so. Because people who don't do drugs steal. And people who don't have drug problems sometimes recreationally use drugs. We can get into formal logic as to the fallacy of the premises you take on that, but go ahead. Right. And so, you know, again, and I'm taking the position that she's not sick only because I haven't seen anything in the record that says she's sick. She didn't argue she's sick. The one thing, if she came in, the District Court said, look, and frankly, this is what I probably would have advised her to do. Look, I'm sick. I've been out of jail. I've been doing my best. You know, I've got a problem. You know it. I own that. It's on me. You know, the court showed me mercy and I'm just trying to keep this happening. Well, there's no indication that the judge listened to anything that she said. I would disagree with that because Show me in a citizen way an indication that you listened to anything she says as to reasons that may cause her to present to the court as she has or is today. What's the indication? Frank, okay, so I understand what you're saying. In the record When you say I understand what I'm saying, I'm talking about the record. I'm not trying to make, I'm not trying to define this from some psychological analysis. I'm talking about where is the indication in the four corners of what he said. I've read it. I didn't see it. Did you? It's not there.  So you suggest she could have said something else, but what she did say is no indication. So using logic again, there's no indication if she had said more, that would have been in there either. You would have considered it. Let me backtrack a bit. Okay, go ahead, backtrack. Because when I say there's no indication, I do think there's indication. The court, on several instances, asked her what she had to say and she said what she had to say. Now, no, the court didn't say, I don't think that's a good argument. No, the court didn't say, that's a poor argument. But frankly, you know, when you look at her counterarguments, and if I could just point out what those counterarguments are, because that's what the court asked her and that was her opportunity to talk and her counsel's opportunity to talk, this is what they said. First, she says, I had a job at a local, she had a job at a local restaurant and is eligible for Social Security benefits. Nonetheless, you left the district without telling anybody. You disappeared, not even mom knew where she was at. While you're gone, you're stealing. All this and you're telling us that you have a job, you've got some structure, you have an opportunity here to do better. In the district, how far away was she? She was in Maryland. Okay, she should have been where? In North Carolina. Right, so she went three states up. And how long did she stay there? Well, she went three states up, but no one knew where she was. Yeah, but how long did she stay? That I'm not real clear on, and frankly, I'm not real clear if probation would ever track her down if she hadn't been stealing in Maryland. And so, I mean, that's not real clear from the record, but I mean, I also, if we're going to draw that kind of inference, I think we've also got to look at the fact that it would appear the only reason we knew she was in Maryland is because she committed the theft while she was there. Her other counterargument says she desires to move away from Wilmington, but she was away from Wilmington when she committed the theft. And so, Wilmington's not the problem here. You know, her tone with her counterarguments, it kind of almost made me think of when I was a child and, you know, you spill a pitcher of tea on the kitchen floor and your mom comes in, there's nothing on the floor but you and a cup of tea and an overturned pitcher and you say, Mom, I know this looks bad, but you have no idea how slippery that pitcher was. I mean, this is not Wilmington's fault. Wilmington didn't make her commit the crime she committed. In fact, when she left Wilmington is when she committed really the criminal conduct here. And so, you know, she says she participated in a scared straight program. Let me just ask you this. Part of this is how many states away she went and if she left the state and failing drug tests, those are just absolute violations of conditions. Those conditions aren't unique to her case, are they? Aren't those standard conditions? Those are the conditions themselves, yes. Those are the conditions. Right. You shall not leave the state, the district, without permission of the judge. Some people go to the judge and ask for permission, don't they? Right. Yes. You shall not, in fact, at least the standard that I remember, shall not violate the law or hang around with people who do violate the law. Right. And so the point is, those things are, whether they should be conditions or not, that might be a question for Congress or something, but those are conditions that are set on her. It seems to me the other argument is, however, and you were headed that way, she was given an opportunity to say what she said, it seems to me that maybe what we need to focus on is, was the judge, in his response, did the judge take that into account? And if he did, how do we know it? Does that make sense to you? It makes perfect sense. Well, I'm glad it makes perfect sense. It didn't sound so good to me, but I'm glad you endorsed it. But the point is, that's what we have to, I think we have to say, how are we comfortable that the judge took into account everything in the courtroom, what was said to him? And I think you said, and I've looked at it again, he did not expressly, explicitly, say that, did he? So what, do you understand, what's your argument that, I think she's in question, she broke the conditions, she didn't even challenge, I think she didn't challenge some of them. Right. Right? And so she broke those conditions, which conditions may or may not be harsh, but that's just what they are. So the question now is, in looking at what he did, how do you say we should be comfortable in believing that he did take what she said into account, and at least had that in his mind as he sentenced her? I'm glad you asked that, and I would, let me just start before I get to that answer by saying she actually didn't dispute any of the violations. Even though, you know, she was only found... I'm just trying to remember all the time. Right. Right. And so, let me start there, and then let me go a little further by saying that the judge, in this case, sentenced her according to what the government argued for. The government asked for 36 months, that's what the judge here gave her, and the judge did so, his reasoning for doing so, mirrors very closely what the government argued. The government argued that that 36 months is based upon... You can go on, but it's not responsive to Judge Shedd's question. His question is, how can we know that the judge considered the defenses that she raised? You're absolutely right. He must have heard exactly what the government said, because it gave him exactly what they asked for. We know that. I thought Judge Shedd is here, he can correct it, but I thought he asked you, how can we be sure the indication that the judge heard what she said, and or considered it? Right. And he did, and I was taking a long time getting there, and I apologize for that. You only have two minutes minus. Go ahead. Right. You would be the first lawyer that took a long time getting there. I'll take that. My position is that by adopting the government's argument, that the logical extension of that is that he rejected her argument. Now, again, I know, I recognize... Categorical. Cut out all the responsibility of even saying anything in the record about responding to what she has to say. That's a one-fell-swoop response, but aside your new jurisprudence you want to establish, what did the indication that the judge looked at or heard? Again, that's... It's not there, is it, Mr. Pendleton? It's not there. It's not explicitly there. No, it's not implicitly there. See, I think that's where I differ a bit. Well, give me the implicitity. Again, I think that the read between the lines, the divine somehow cosmic interpretation, something, I'm giving you the cosmic opportunity because I don't see it. Tell me. Where is it? I think... Not one word. I think that by adoption of the government's argument, it is... I think it's a rejection of her argument. But let me... What is a rejection of her argument? Let me say this. I think it would depend in part on exactly what you said. Quite frankly, I can't remember what you said. But if you responded to her, you could at least make the argument, if you responded to her claims in your argument, you could say, we responded to him and he accepted what we said. Does that make sense to you? I don't know if you did that or not. The government could stand up and say, she just said she didn't have the opportunity. That's not true, Your Honor, because her mother... You could, in your response or your argument, it could be in some ways the government's argument or comments could be responsive to her. So it could be that might be more or less, he's implicitly accepted that by adopting your position overall. But I'm just asking that... I don't know that that happened in this case. I just can't remember. So I just want to be clear. So what you're asking is, did the government address her counter-arguments? Right. You know, explicitly... You take my point on that. Yeah, go ahead. You're about to say whether or not it's in the record. It's not there, is it? Explicitly, I haven't seen directly where the government says, this is her counter-argument and this is why it's a weak argument. Yeah, because the government couldn't say that it had no impact in terms of her dealing with Scarce Street and helping people not go the path that she had gone. Because there really is no response that that didn't have an impact trying to help somebody not to go down the road she did. There was no response to that. Well, you wouldn't make light of that, would you? Would you make light of that if someone said, I went and talked to a bunch of kids and said, look at me. This is where I am now. I don't want you there. I don't think you would, would you? You know, Judge Greger, you're talking to an ex-high school teacher. And I've worked with tough kids and I recognize that there's value in that. That's what I'm saying. But that value is significantly diminished when the very thing you're claiming to steer them away from is the exact lifestyle that you're currently living. And so, you know, to say that, you know, I deserve leniency because I'm taking time to basically go tell kids not to do what I'm currently doing. Again, I think the value of that is diminished a bit. And I think that's what Judge Fox looked at here. Now, Judge Fox could have gone, he could have torn into her and said, look, you ought to be ashamed. You're a hypocrite. You're talking to these kids and then you're out here doing the opposite. He chose not to do that. I'm not necessarily sure that's a bad thing. It would make my job a lot easier if he'd have done that. But I'm not necessarily sure it's a bad thing that he chose not to take that approach here. That's the whole problem here is that Greger probably does contain at least indications of a whole bunch of reasons that he could have laid out here. Right. He didn't do it. And then, so that leads to the question, was he required to do it? Going back to Judge Shedd's earlier dialogue with the Defendant's Counsel, what compels him to do it? The policy statements that here, where is it therein that he's compelled to do these things? And that would set up the whole scenario. To pay you to do it means go back and do it. I know, and probably everybody else here knows, that if this was the same judge, what would happen? He'd go back and simply just read it back and correct it. Probably going to get the same sentence. I'm not sure that's not going to happen anyway. But we have to follow the letter of the law here. And if we now have this requirement, and Shedd seems to be somewhat at odds with it in terms of how far it goes, if you have this requirement, you've got to do these things. You've got to say the magic word. You've got to tell us these things. We've got these unpublished opinions. If they were precedent, I think they would be a block on this case. If you've got that precedent, those unpublished opinions, they are persuasive. They are recent. They are colleagues that did these things. So we're not going to ignore them. But if that's the state of the law in terms of you have to do this, you can't just say the government did it and I'm going to incorporate everything that the government said in this argument because those are good reasons. Well, it would be helpful if you did say that. But you didn't say that. You just did it. So that's the problem in this case. Judge Fox didn't do it and if the case is what the law is going to be in the instance that these are things you have to do, then we can only remand. So let me respond to that first by saying and I'm going to hedge a bit because there's a possibility that maybe I didn't read the Chapter 7 policy statements close enough. But I haven't seen anything in there that says he has to respond to these. Further, that comes from unpublished cases and I did put up again in my 28-day response bulware which again I recognize it's a harmless error case. But the court in that case dealt with a similar situation where the defendant there and frankly actually raised as a mitigating factor that she'd worked with young people. And the court didn't address it and this court said I don't know that anything more needed. I'm paraphrasing but nothing more needed to be said. We're satisfied that you considered it. Again, I recognize that's harmless error. But that is a published case and the reasoning aligns very closely with my argument here. It's not so much that she raised arguments and Judge Fox didn't respond to them as much as what I'm saying is the arguments, they didn't raise to the level of necessitating a response. Give me at least some clarity in terms of the fact that the district court only found those violations of three and four which I think of the one she says she just played out and says I did those. She didn't contest the others but those two specifically she was dead on. And the judge looked back at me and took the easy route and says hey, he knew that was enough. That's all you need is those two. You don't need the other three. But then he goes on and he talks about the other three violations. This is sentencing now and I think I'm not so sure he can't do that. I think he probably can. He hasn't contested the whole bit. And I'm what is the import of doing that? I mean once he does that what I mean how do we view the significance of the district court referencing those violations  of whether the revocation sentence is poignantly unreasonable? Well I think you're right in that in sentencing Oh, I'm sorry. I was trying to validate what I was saying. In sentencing he can consider those things even though he didn't find her guilty of those things. She didn't dispute them at any point. The first thing he asked in our determination whether the sentence is plainly unreasonable. The significance of him considering those things? Those other three. I don't think given that she didn't dispute them given that the evidence that now again I would also note that with respect to the theft evidence was proffered on that. Now he didn't hear the witnesses on those other two. But now the United States did offer up evidence on the theft in Maryland. The theft in Maryland. So I would note that I don't think given that she didn't dispute them I don't think it makes this plainly unreasonable. I think you've got a different situation if she disputes having done those things and he doesn't hear any evidence on it and then at the end says and you did this, this and this. But if they may be considered the issue becomes I think might be violated on two. Three others she didn't contest and she talked about them and you say they can be used in sentencing wouldn't that suggest that the sentence was not plainly unreasonable? Exactly. Because you could take those other facts into account. But is that plainly unreasonable on the substantive side versus the procedural side where he didn't actually respond expressly to what she said. So I'm out of time. Can I go ahead and respond? Yes, you may proceed. Go ahead. I think to be honest I lost your question. I was going to say you could use the other occasions and the other three violations that weren't decided. Would that go to the question of substantive plainly unreasonable or procedurally plainly unreasonable? Do you get my distinction? Yes. I think that that would go to a discussion of procedural unreasonable. I don't think it is procedurally unreasonable. Again, I'm drawn to the language that you used in critical that says plainly means obvious. And the question here is based on that is this an obviously unreasonable sentence? I don't think you can say that particularly when you consider the fact that we've already I don't think any of us are disagreeing that the court could consider those things. We may disagree as to how much the court should have considered them. But we don't disagree as to the fact that that was within the law that was within procedure for the court to consider those things. Does she have children? Does she have children? It was mentioned when she failed her first drug test. When I read that report she said she was having a hard time connecting back with her child. I was trying to find something that told me how old she is and a little more about her family. You didn't do this did you? They said 36 months. She was bonding with her children. After getting out it was hard for her to bond with her. I understand when she failed her first drug test. There was something in the record about her. Two violations. One was stealing shoes. She had the first failed drug test. The ones he found. That was another failed drug test. Dirty urine. What was the other one? I believe it was the skipping of seven drug tests. She failed to show up. The one drug test she failed was sandwiched between the seven she skipped. You said there is no indication she has a drug problem. Maybe she is just taking this recreationally. There is nothing in the record that indicates this person has said I am sick or raised that as a defense. I would think that would probably warrant some discussion. If a person says I am sick I have a drug problem I have been trying to kick it for 10 years. She didn't say that. She said it is Wilmington. She blamed Wilmington. She was represented. Thank you. You have time reserved. All right. Thank you. Excellent lawyer. I teach a class and argue in front of the fourth circuit and I say it sometimes. If you don't have anything else to add the court understands it. It is perfectly fine to say it. I commend you. We will come down and take a short recess.
judges: Roger L. Gregory, Dennis W. Shedd, James A. Wynn, Jr.